<u>**NOT FOR PUBLICATION**</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

MARY H.,

               Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Civil No. 20-15422 (KMW)

Appearances:

Richard Lowell Frankel, Esq., and Jennifer L. Stonage, Esq.
          Counsel for Plaintiff Mary H.

Shannon G. Petty, Esq.
Social Security Administration – Office of General Counsel
          Counsel for Defendant Commissioner of Social Security

**WILLIAMS**, District Judge

<u>**OPINION**</u>

### I. INTRODUCTION

This matter comes before this Court pursuant to 42 U.S.C. § 405(g) for review of the final

decision of the Commissioner of the Social Security Administration ("Commissioner") denying the

application of Plaintiff Mary H. ("Plaintiff") for a period of disability and disability benefits under

Title II of the Social Security Act, 42 U.S.C. § 401, et seq. Plaintiff, who suffers from irritable

bowel disease, diabetes mellitus, hypertension, duodenitis status post hernia repair, and obesity,

seeks benefits for the period beginning on March 10, 2015, the alleged onset date of disability, to

December 31, 2015, date of last insured. The Administrative Law Judge Karen Shelton ("ALJ")

issued a written unfavorable decision on July 10, 2019.

In the pending appeal, Plaintiff argues that the ALJ's decision must be reversed and

remanded because the ALJ erred in her treatment of the medical opinion evidence and her

application of the medical vocational guidelines by finding Plaintiff had transferable skills from

past relevant work which she did not perform. Pl.'s Br. [ECF No. 11], 2. For the reasons stated

below, the Court will remand this matter with instructions to proceed in a manner consistent with

this opinion.

## II. BACKGROUND

### A. Procedural History

Plaintiff filed an application for a period of disability and social security disability benefits

on March 19, 2015, alleging an onset date of March 10, 2015. Administrative Record (hereinafter

"A.R.") [ECF No. 8], 70. Plaintiff's claim was initially denied by the Social Security

Administration on September 12, 2015, and upon reconsideration on February 9, 2016. A.R. 62,

71. Plaintiff filed a written request for a hearing on May 24, 2016, but on September 29, 2016,

Plaintiff's request for a hearing was dismissed as untimely. A.R. 85, 107. By order dated June 20,

2017, the Appeals Council reversed the dismissal and remanded Plaintiff's case. A.R. 89. Plaintiff

appeared and testified at a hearing before the ALJ on June 4, 2019. A.R. 16. The ALJ issued a

decision on June 5, 2019 denying Plaintiff benefits. A.R. 13. On August 28, 2020, the Appeals

Council denied Plaintiff's request for review. A.R. 1. This appeal timely follows.

### B. Factual & Medical History

Plaintiff was born on January 3, 1957, and was 58 years of age on March 10, 2015, the alleged onset date. A.R. 62. Plaintiff completed high school and worked as a principal clerk typist at a state facility – Vineland Developmental Center – prior to retiring in 2010 with a pension after 32 years of service. A.R. 42-44.

Most relevant to the issues raised for the Court's review, Plaintiff's medical records reflect issues with recurrent hernias. On June 26, 2014, Plaintiff presented to the emergency room at Inspira Health complaining of a longstanding hernia and increasing pain associated with it. A.R. 291-94. Plaintiff was admitted to Inspira Health and diagnosed with a ventral hernia. A.R. 291-294. Plaintiff saw Dr. Per M. Montero-Pearson who discharged Plaintiff with a plan for elective surgery. A.R. 291. Prior to discharge on June 28, 2014, several other medical conditions were treated: elevated serum protein, hyperglycemia, deep venous thrombosis prophylaxis, and hypertension. A.R. 294.

On June 30, 2014, Plaintiff, after presenting to the emergency room with worsening abdominal pain, nausea, and vomiting, was diagnosed with chronic incarcerated ventral hernia, with small bowel obstruction, diabetes, and hypertension. A.R. 295-296. As a result, Plaintiff was readmitted to the hospital and Dr. Montero-Pearson performed surgery on July 1, 2014. A.R. 295-96. At discharge, Plaintiff was advised by Dr. Kendall Blair to limit strenuous activity – to include no lifting of more than five pounds – until her next visit with Dr. Montero-Pearson. A.R. 296. On July 9, 2014, after presenting to the emergency room with post-surgery fevers and draining out of her lower abdominal incision, Plaintiff was again admitted to the hospital with a surgical site infection. A.R. 304-308. Plaintiff was treated with antibiotics and her wound was re-cultured. A.R. 304. However, because Plaintiff continued with pain at the surgical site, on July 12, 2014, she

required abdominal wall wound exploration. A.R. 304. An incision and drainage as well as wound VAC placement were undertaken around her surgical site. A.R. 304. Plaintiff's wound VAC was changed again on July 15 and 18. R. 304. Plaintiff was discharged to Genesis Rehabilitation for wound VAC changes and medical management. A.R. 304. As part of her discharge instructions, Dr. Casey Sheck prohibited Plaintiff from lifting "more than 10 pounds until the wound has been healed." A.R. 305.

On July 28, 2014, Plaintiff had a post-operative visit with Dr. Montero-Pearson, wherein Dr. Montero-Pearson noted that Plaintiff was doing exceptionally well; the wound VAC shrunk the opening down dramatically. A.R. 275-76. On October 14, 2014, Plaintiff visited Dr. Sanjay K. Bhendwal for a routine follow up, test results, and hair loss. A.R. 309-11. Dr. Bhendwal noted that Plaintiff's abdominal wound healed and further assessed Plaintiff's hypertension, hyperlipidemia, diabetes, and alopecia. A.R. 310. During a February 3, 2015 visit with Dr. Bhendwal, the doctor observed Plaintiff as obese and noted that Plaintiff's abdominal hernia was getting bigger and painful. A.R. 312-15. Regarding the hernia, Dr. Bhendwal planned for a surgical referral. A.R. 314. On February 18, 2015, Plaintiff saw Dr. Montero-Pearson about the recurrent herniation. A.R. 277-78. Dr. Montero-Pearson noted that Plaintiff lost 38 pounds since the July 2014 visit and, after a physical exam noting significant abdominal bulge, planned for an open repair of the epigastric hernia. A.R. 278.

On March 10, 2015, Plaintiff underwent another surgery with Dr. Montero-Pearson to address the recurrent incisional epigastric and umbilical hernia. A.R. 279-80. The record reflects that it was a very complex recurrent hernia repaired with a 23x17 Composix mesh. A.R. 279-80. At a post-operative visit on March 18, 2015, Dr. Montero-Pearson noted that the wound looked

4

good and there was no evidence of infection. A.R. 281-82. Dr. Montero-Pearson reviewed

forward-looking events and indicated that Plaintiff would be unable to do any lifting, carrying, or

pushing of any sort for the rest of her life because even with the mesh repair, her abdominal wall

will be very fragile.[1] A.R. 281-82. On March 26, 2015, Plaintiff again saw Dr. Montero-Pearson

to have the post-operative suture removed with the doctor observing that Plaintiff's wound looked

good and healed nicely. A.R. 283-284. Dr. Montero-Pearson again confirmed that Plaintiff has

very little muscle tissue in the area where the hernia was and that she would spend her life focused

on protecting the area from trauma. A.R. 283. Dr. Bhendwal saw Plaintiff on May 13, 2015 and

observed that she was doing well post operation. A.R. 267.

On August 24, 2015, Plaintiff had a consultative examination with Dr. Samuel Wilchfort.

A.R. 285-86. Dr. Wilchfort noted Plaintiff's surgical history relating to the hernia, Plaintiff's

report that her surgeon stated that she is unable to do any lifting, and her history with high

cholesterol, diabetes, and hypertension. A.R. 285. Upon physical examination, Dr. Wilchfort noted

no abnormal enlargement of the abdomen; normal muscle strength and range of motion for upper

and lower extremities; and Plaintiff's ability to bend over 90 degrees, toe walk, heel walk, and

squat.[2] A.R. 285.

Additionally, at the initial review stage of Plaintiff's application for social security benefits,

state medical consultant Dr. Joseph Udomsaph determined, based on an assessment of the medical

---

[1] The medical record from the March 18, 2015 visit actually contains typographical errors providing: "she was I will be able to do any lifting carrying or pushing of any sort for the rest of her life." The ALJ and counsel for all parties construed this sentence as reported by Plaintiff, that she would be unable to carry, lift, or push for the rest of her life.

[2] The record also contains an imaging report dated after the date Plaintiff was last insured – thus, not applicable here – reflecting post-surgical changes in the anterior abdominal wall from prior hernia surgery.

evidence, that Plaintiff maintained the ability to occasionally lift or carry up to 20 pounds;

frequently lift or carry 10 pounds; and engage in unlimited pushing or pulling. A.R. 66-67. Dr.

Udomsaph found Plaintiff "not disabled." A.R. 69. On reconsideration, another state medical

consultant, Dr. Jose Rabelo, affirmed Dr. Udomsaph's finding. A.R. 78-79.

### C. Hearing Testimony

At the administrative hearing on June 4, 2019, Plaintiff was represented by counsel and

testified. A.R. 33. The ALJ heard testimony from Angela Iskandar, an impartial vocational expert

("VE"). A.R. 53-60. Plaintiff testified she lives at home with her husband and adult son. A.R. 41.

Plaintiff is a high school graduate and held a license as a licensed practical nurse – that license is

currently inactive. A.R. 43. Plaintiff was a principal clerk typist with the state of New Jersey

before she retired. A.R. 44-48. In that role, she ordered medical supplies, tracked supplies, entered

data, provided reports as requested, i.e., from the chief executive office, maintained purchase order

records, filed documents, answered phones, and called vendors. A.R. 44-48.

After the surgeries, her abdomen still bothers her daily, but it does not impact the ability to

stand or walk, unless she stands for long periods of time. A.R. 49. Plaintiff also cannot sit for long

periods of time, but instead lays back in a recliner for about two to three hours per day. A.R. 48-

49. Plaintiff does not like to take pain medication because it makes her drowsy, but she will take

Tylenol at times. A.R. 52. Plaintiff does not lift or carry anything because she was instructed not to

lift or carry for the rest of her life. A.R. 49-50.

Some of Plaintiff's daily activities include cooking, folding clothes, dusting, partially

making the bed, and shopping. A.R. 50-51. Plaintiff does not carry a purse, lift the coffee pot or

items at the store, or vacuum. A.R. 50-51. Plaintiff relies on her husband to help with many daily

activities – her husband helps put the laundry in the washer and dryer, retrieves pots and pans so that Plaintiff can cook, and helps to make the bed. A.R. 50-51. Plaintiff has a car and there are no limitations on her driving. A.R. 42.

The ALJ heard testimony from the VE who classified Plaintiff's past work as an order clerk with an SVP of four, or semi-skilled, and a light exertional level. A.R. 54. The VE chose order clerk as opposed to similar typist/clerical titles because Plaintiff was responsible for ordering supplies, doing some counting, and taking care of documentation relating to the same. A.R.54. The VE testified, upon receiving a hypothetical from the ALJ, that Plaintiff could perform the occupation of order clerk if she could lift or carry no more than 20 pounds occasionally or 10 pounds frequently; stand or walk no more than six of eight hours; sit for six of eight hours; frequent ramps and stairs, but no ladders, ropes, or scaffolds; frequently balance; and occasionally stoop, kneel, or crouch, but no crawling. A.R. 56. Considering another hypothetical, the VE opined that an individual would be precluded from their prior work history if the person were limited to sedentary, could lift or carry no more than 10 pounds, stand or walk no more than two of eight hours, and sit for six of eight hours. A.R. 57. Regarding the second scenario, the VE testified that there would be transferable skills from the past work to the sedentary work – data entry, maintaining records and documentation, and customer service. A.R. 57. The occupations that those skills would transfer to are data entry clerk – SVP of four, or semi-skilled, and sedentary, with national numbers of 24,672 – and clerk/typist – SVP of four, or semi-skilled, and sedentary, with 9,000 jobs nationally. A.R. 58. The VE testified that neither the data entry clerk or clerk/typist occupations would be available to someone who could not lift five or ten pounds. A.R. 59. The VE stated that if a person can never lift 10 pounds, sedentary jobs are not available. A.R. 59. The VE

7

also testified that if a person were required to recline for one third of the workday, the referenced occupations would be precluded. A.R. 60.

**D. ALJ Decision**

In a written decision dated July 19, 2019, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act at any time from March 10, 2015, the alleged disability onset date, through the date last insured. A.R. 16.

Using the five-step sequential evaluation process, the ALJ determined at step one that Plaintiff had not engaged in any substantial gainful activity from March 10, 2015 through December 31, 2015. A.R. 18.

At step two, the ALJ found that Plaintiff had the following severe impairments: irritable bowel disease, diabetes mellitus, hypertension, duodenitis status post hernia repair and obesity. A.R. 18.

Next, at step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, meet or equal the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. A.R. 19. Regarding hypertension, the ALJ noted that there is no evidence in the medical file of a specific body system so affected so as to meet a listing. A.R. 19. Additionally, the ALJ noted that while Plaintiff is diagnosed with diabetes, there is no evidence of complications. A.R. 19.

The ALJ also found that Plaintiff did not meet listing 5.06A, stating that listing 5.06A requires two hospitalizations for intestinal decompression or for surgery occurring at least 60 days apart within a consecutive six-month period for obstruction of stenotic areas in the small intestine or colon with proximal dilatation. A.R. 19. The ALJ noted that a CT of the abdomen and pelvis on

June 30, 2014 showed a ventral hernia. A.R. 19. Following the scan, Plaintiff underwent surgery

on July 1, 2014 and then had a second surgery on July 12, 2014, both occurring prior to the period

at issue and less than 60 days apart. A.R. 19. Thereafter, Plaintiff underwent a third surgery on

March 10, 2015 which occurred more than 60 days from July 12, 2014, but not within a six-month

consecutive period. A.R. 19.

> Next, the ALJ determined that Plaintiff, through the date last insured, had the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant
> needs to sit for 5 minutes after 30 minutes of standing or walking. She can frequently
> climb ramps and stairs, never climb ladders, ropes or scaffolds, frequently balance,
> occasionally stoop, kneel and crouch but never crawl.

A.R. 19-20. In the analysis of Plaintiff's ability to perform sedentary work, the ALJ thoroughly

referenced and considered Plaintiff's medical impairments, the medical and other record evidence,

and Plaintiff's statements concerning the intensity, persistence, and limiting effects of her

symptoms. A.R. 20-26. Regarding Plaintiff's irritable bowel disease, diabetes, and hypertension,

the ALJ imposed a sedentary exertional level with a sit/stand option and/or postural limitations in

consideration of her medical impairments. A.R. 24-25. First, the ALJ found little evidence of

adverse functioning relating to Plaintiff's irritable bowel syndrome diagnosis noting that, during

several examinations, Plaintiff denied constipation, abdominal cramps or pain, nausea, vomiting,

or changes in bowel habits and/or loose bowels. A.R. 20, 24.

> Next, regarding the diabetes diagnosis, the ALJ noted that Plaintiff was controlling the

condition with diet and had no polyuria or eye involvement. A.R. 21, 25. The ALJ noted that

though Plaintiff was diagnosed with hypertension, not fully controlled, she did not establish that

she experiences end organ manifestations, reported no cardiovascular symptoms, and had not been referred to a cardiologist. A.R. 21, 25.

The ALJ also addressed Plaintiff's duodenitis status post hernia repair outlining Plaintiff's many examinations and surgeries – two before the relevant period and one during. A.R. 22, 24. The ALJ referenced Dr. Montero-Pearson's observation following the March 2015 surgery that Plaintiff's wound healed nicely as well as Dr. Montero-Pearson's statement that Plaintiff's abdominal wall would be very fragile. A.R. 22. Referencing the consultative exam with Dr. Wilchfort, the ALJ noted that the Plaintiff reported that she was told by the surgeon that she could not do any lifting. A.R. 22, 24. The ALJ also referenced Dr. Wilchfort's finding that Plaintiff's upper extremity strength and range of motion were normal. A.R. 22, 24. Considering Plaintiff's duodenitis, the ALJ assigned the sedentary exertional level with additional postural limitations and a sit/stand option to consider Plaintiff's impairment and subjective complaints and limit her lifting. A.R. 24. The ALJ determined that no limitation was necessary relating to Plaintiff's testimony about the need to recline to ease abdominal pain finding that Plaintiff did not establish that the need arose based on Plaintiff's impairments during the relevant period nor is this reclining limitation evidenced in the medical records through the date last insured. A.R. 24.

Considering Plaintiff's final impairment – obesity, the ALJ found that Plaintiff's obesity impacts her duodenitis status post hernia repair "making it more difficult to perform functional activities." A.R. 23. Considering this impact, the ALJ assigned the sedentary exertional level with additional postural limitations. A.R. 23.

Additionally, the ALJ found that while the above-referenced impairments caused Plaintiff to experience some pain and discomfort, the alleged extent of Plaintiff's reported pain and

discomfort were not consistent with the medical record nor would the presence of any of the impairments, or combination thereof, result in symptoms so severe to preclude Plaintiff's RFC as assigned. A.R. 23-25.

Turning to the opinion evidence, the ALJ assigned some weight to the state agency medical consultants' opinions, assigning little weight to the opinion that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, and stand or walk for six out of eight hours per day. A.R. 25. The ALJ found this opinion inconsistent with Plaintiff's subjective complaints and the combination of Plaintiff's impairments. A.R. 25. The ALJ, however, assigned great weight to the remainder of the state agency medical consultant opinions finding them consistent with the medical record. A.R. 25.

The ALJ assigned little weight to Dr. Blair's opinion limiting Plaintiff to lifting less than five pounds "until her next visit with the surgeon," finding that Dr. Blair was merely providing limitations following the surgery with no intent for said limitations to remain permanently. A.R. 25. On the other hand, the ALJ assigned great weight to Dr. Sheck's opinion that Plaintiff "was not to lift more than 10 pounds until the wound had healed," noting that the opinion is consistent with ALJ's conclusions. A.R. 26. Finally, the ALJ assigned little weight to Dr. Montero-Pearson's opinion that Plaintiff could not perform any lifting, carrying, or pushing for the rest of her life and her life would be focused on protecting her surgical site from trauma. A.R. 26. The ALJ stated:

> I find that his opinion is inconsistent with the findings herein. **Dr. Wilchfort's examination reflected that her upper extremity strength was normal, which I conclude would not be the case if the claimant was lifting nothing between March 2015 and August 2015 as Dr. Montero-Pearson indicated**. Despite her testimony to the contrary, the claimant's Adult Function Report reveals that she could make her bed, fold laundry, shop in stores and prepare complete meals. She could manage her personal care needs. She admitted that she could not lift heavy pots or

11

put pans in the oven. She drove a car. **<u>I find that the claimant's functional activities</u>** **<u>are inconsistent with Dr. Montero-Pearson's limitations and that she has</u>** **<u>redeveloped a hernia, which would likely not have occurred if she had not been</u>** **<u>lifting, carrying, pushing or pulling as he recommended</u>**.

A.R. 26 (emphasis added; internal citations omitted).

Based on Plaintiff's RFC and testimony from a vocational expert, the ALJ found, at step four, that Plaintiff could not perform any past relevant work as an "order clerk" (Dictionary of Occupational Titles (DOT) code 249.362-026), which was described as semi-skilled and light. A.R. 26. The ALJ, noting that Plaintiff at 58 years of age was an individual of advanced age, found that Plaintiff acquired skills from her past relevant work as an "order clerk" such as data entry, maintaining records and documentation, and customer service. A.R. 26-27.

At step five, the ALJ found that Plaintiff acquired work skills from her past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy, including those of data entry clerk (24,672 jobs nationally) and clerk typist (9,000 jobs nationally). R. 27. The ALJ noted that in considering whether a successful adjustment to other work could be made, the ALJ considered Plaintiff's age, education, work experience, and residual functional capacity in conjunction with the Medical Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. A.R. 27. The ALJ also considered testimony from the VE and found the testimony concerning Plaintiff's ability to perform the data entry clerk and clerk typist professions to be consistent with the information contained in the DOT. A.R. 27. Regarding the acquired work skills from past relevant work, the ALJ relied on the VE's testimony that Plaintiff's previous work was so similar to the occupations noted above that Plaintiff "would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry because

there is a three way match for these jobs . . ." A.R. 27. Thus, the ALJ found that "although the [Plaintiff's] additional limitations did not allow the claimant to perform the full range of sedentary work," based on the Plaintiffs' "age, education, and transferable work skills", a finding of 'not disabled' was appropriate. A.R. 27.

### III. LEGAL STANDARD

#### A. Standard of Review

This Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) providing the court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court must uphold the Commissioner's factual findings where they are supported by "substantial evidence." 42 U.S.C. § 405(g); *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). Substantial evidence is defined as "more than a mere scintilla," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012). Therefore, if the ALJ's findings of fact are supported by substantial evidence, the reviewing court is bound by those findings, even if it would have made a different determination. *Id.* (citing *Fargnoli*, 247 F.3d at 38). The Court may not weigh the evidence or substitute its own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

Remand is appropriate if the ALJ decision lacks adequate reasoning, *Fargnoli*, 247 F.3d at 42, contains contradictory findings, *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000), or if the ALJ failed to conduct a complete review and explicitly weigh all relevant, probative, and available evidence in the record, *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d

Cir. 1979). "Remand is not required where an error or oversight would not affect the outcome of the case." *Kalb v. Comm'r of Soc. Sec.*, No. CV 17-5262 (JBS), 2018 WL 6716822, at *6 (D.N.J. Dec. 21, 2018)(citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)).

### B.   The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a). If the ALJ determines at any step that the claimant is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4). The regulation describes the process as follows:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4).

### IV. DISCUSSION

Plaintiff makes two arguments. First, Plaintiff argues that the ALJ erred in her treatment of the medical opinion evidence – namely, Dr. Montero-Pearson's opinion – in assessing Plaintiff's RFC. Pl.'s Br. 2. Second, Plaintiff contends that the ALJ erred in finding that Plaintiff had past relevant work as an "order clerk" and, as a result, erred in finding that Plaintiff had transferable skills from this alleged past relevant work. Pl.'s Br. 2. As such, Plaintiff requests that the Court enter judgment awarding benefits to Plaintiff or, alternatively, reverse the Commissioner's decision and remand the case for further action. The Court addresses each issue in turn.

### A. Erroneous Treatment of Dr. Montero-Pearson's Opinion

Plaintiff argues that the ALJ failed to properly weigh and erroneously rejected the opinion of Plaintiff's treating physician for the ALJ's unsupported medical opinion and, therefore, arrived at an RFC that was inconsistent with Plaintiff's limitations. Pl.'s Br. 11-15. Specifically, Plaintiff contends that the ALJ, without applying 20 C.F.R. § 404.1527, incorrectly rejected the opinion of Plaintiff's long-standing surgeon, Dr. Montero-Pearson, who opined that Plaintiff would be unable to lift for the rest of her life. Pl.'s Br. 13. Plaintiff argues that the ALJ made an impermissible medical determination when she relied on Dr. Wilchfort's examination – finding that Plaintiff's upper extremity strength was normal – to determine that Plaintiff's upper extremity strength would not have been normal "if [Plaintiff] was lifting nothing between March 2015 and August 2105 as Dr. Montero-Pearson indicated." Pl.'s Br. 13. Plaintiff argues that the ALJ does not cite to a medical opinion or literature to support her finding that Plaintiff would have sustained loss of strength after five months of limited use of her upper extremities. Pl.'s Br. 13. Moreover, Plaintiff argues that there was no indication that Dr. Wilchfort's examination included testing Plaintiff's ability to lift or carry specific to her abdominal limitations. Pl.'s Br. 13. Plaintiff contends that this

error was not harmless because if Dr. Montero-Pearson's opinion precluding any lifting was properly considered, Plaintiff would have been precluded from performing any work in the national economy pursuant to the VE's testimony. Pl.'s Br. 14-15.

The Commissioner argues that the ALJ considered and gave little weight to Dr. Montero-Pearson's opinion because it was inconsistent with evidence that Plaintiff had "full strength of her arms" in August 2015. Def.'s Br. 8. The Commissioner argues that this would not be the case if Plaintiff was not lifting at all. *Id.* The Commissioner contends that the ALJ did not need an affirmative opinion from any doctor on Plaintiff's lifting abilities because the ALJ permissibly relied on the record evidence supporting the ALJ's finding that Montero-Pearson's finding was inconsistent with the record: records showing that Plaintiff healed well from the March 2015 surgery; Plaintiff received minimal treatment during and after the relevant period; and the ALJ's citation to Plaintiff's activities which required some lifting – making the bed, folding laundry, shopping, preparing meals. *Id.* at 8-10. Additionally, the Commissioner argues that the ALJ was required to consider the medical evidence relating to Plaintiff's upper extremity strength and reach the conclusion about its inconsistency with the Montero-Pearson opinion. *Id.* at 10. The Commissioner argues that it was reasonable for the ALJ to note that full extremity strength would not be expected if Plaintiff could never lift as proposed. *Id.*

In the reply, Plaintiff argues, in a nutshell, that the Commissioner fails to respond to her contention that the ALJ failed to consider the factors outlined in 20 C.F.R. 404.1527 in the ALJ's evaluation of medical source opinions. Pl.'s Reply Br. [ECF No. 13], 2. Further, Plaintiff agrees that the Commissioner was in fact free to weigh and reject probative evidence but contends that the ALJ cannot make medical conclusions. *Id.* at 3. Plaintiff contends that the ALJ engaged in this

exact conduct when she rejected Dr. Montero-Pearson's opinion as inconsistent based on her

conclusion resulting from her non-medical review of Dr. Wilchfort's examination. *Id.* at 4. As a

result, the ALJ arrived at an RFC that is inconsistent with Plaintiff's limitations which is

remandable error. *Id.*

Here, as the Third Circuit found in *Morales*, the ALJ's decision must be remanded because

she improperly supplanted the opinion of Dr. Montero-Pearson, Plaintiff's long-standing surgeon,

with her own speculative finding. *Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir. 2000). Since

Plaintiff's claim for benefits was filed before March 27, 2017, the rules outlined in 20 C.F.R.

404.1527 apply. In this regard, the Third Circuit importantly stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ
> accord treating physicians' reports great weight, especially when their opinions
> reflect expert judgment based on a continuing observation of the patient's condition
> over a prolonged period of time. Where, as here, the opinion of a treating physician
> conflicts with that of a non-treating, non-examining physician, the ALJ may choose
> whom to credit but cannot reject evidence for no reason or for the wrong reason. The
> ALJ must consider the medical findings that support a treating physician's opinion
> that the claimant is disabled. In choosing to reject the treating physician's assessment,
> an ALJ may not make speculative inferences from medical reports and may reject a
> treating physician's opinion outright only on the basis of contradictory medical
> evidence and not due to his or her own credibility judgments, speculation or lay
> opinion.

*Morales*, 225 F.3d at 317. (3d Cir. 2000)(citations omitted).

Unfortunately, as in *Morales*, the ALJ's decision to reject Dr. Montero-Pearson's opinion

based on speculation, as opposed to objective medical evidence, is in direct contravention of the

Third Circuit's dictates. The ALJ expressly referenced, but rejected as inconsistent, the opinion of

Dr. Montero-Pearson, who performed each procedure relating to Plaintiff's hernia, based on the

speculative conclusion that Dr. Wilchfort's August 2015 finding that Plaintiff had normal upper

extremity strength could not have been possible "if the claimant was lifting nothing between March 2015 and August 2015 as Dr. Montero-Pearson indicated." The ALJ does not set forth a basis for this opinion – she does not cite to medical literature or any evidence of record establishing that normal extremity strength firmly establishes that Plaintiff had been lifting. Moreover, Dr. Wilchfort does not make such a finding nor does Dr. Wilchfort's report reference any test performed by Plaintiff during the examination that established Plaintiff's ability to lift or that Plaintiff had been lifting. The ALJ made a speculative inference from Dr. Wilchfort's discrete finding of normal upper extremity strength and rejected Dr. Montero-Pearson's opinion on this basis. Such an action is contrary to the law which prohibits the rejection of a treating physician's assessment based on speculative inferences from medical reports.[3]  *See Morales*, 225 F.3d at 317.

To the extent the ALJ assigned little weight to Dr. Montero-Pearson's opinion because the same was inconsistent with Dr. Sheck's July 2014 opinion, which the ALJ assigned great weight, such a finding is not supported by substantial evidence. Dr. Sheck's opinion, made during Plaintiff's post-surgery discharge, came after Plaintiff's second hernia surgery. Dr. Montero-Pearson who also saw Plaintiff post-surgery on July 28, 2014 did not implement lifting preclusions either. Instead, as noted by the ALJ, Dr. Montero-Pearson's lift preclusion was contained in Dr.

---

[3]  The ALJ determined that Plaintiff's functional activities, as outlined in her Adult Function Report, were inconsistent with Dr. Montero-Pearson's limitations and, citing to exhibit 9F, noted that Plaintiff redeveloped a hernia "which would not likely have occurred if she had not been lifting, carrying, pushing or pulling as he recommended." Here again, because the imaging report does not reference such a finding, the Court is not certain about the ALJ's basis for concluding that Plaintiff's hernia reoccurred because she was not following Dr. Montero-Pearson's limitations. This conclusion is speculative. Additionally, both the Defendant's brief and the ALJ's decision fail to fully recite the information in the Adult Function Report. The brief and the decision reference that Plaintiff made her bed, shopped in stores, folded laundry, and prepared meals, however, within the same report, Plaintiff highlights her lifting limitations. Plaintiff outlines that she shops with her husband who lifts items for her and that she cannot lift heavy pots or put pans in the oven when she cooks. A.R. 223. At the hearing, Plaintiff further explained that her husband loads the washer and dryer and brings the laundry to her for folding in addition to changing the sheets on the bed. A.R. 51.

Montero-Pearson's March 2015 opinion – after Plaintiff's third hernia surgery. Thus, Dr. Sheck's opinion cannot be used as a catalyst to assign less weight to Dr. Montero-Pearson's opinion rendered after the third surgery on what Dr. Montero-Pearson characterized as a "very complex recurrent hernia."[4] A.R. 279-280. Simply put, Dr. Sheck's opinion is not inconsistent with Dr. Montero-Pearson opinion because each were rendered at different times and based on different circumstances in Plaintiff's medical journey.

Finally, Plaintiff is correct –the ALJ failed to address and provide good reason, as required by the regulations, in her decision not to provide Dr. Montero-Pearson's medical opinion controlling weight. *See* 20 C.F.R. § 404.1527(c). Plaintiff has been treating with Dr. Montero-Pearson since June 2014 and the doctor performed all three of Plaintiff's hernia surgeries. Although not within the relevant period for disability, Plaintiff was still treating with Dr. Montero-Pearson as late as 2017 when the doctor ordered a CT of the Plaintiff's abdomen and pelvis. A.R. 321-322. The ALJ's decision is silent on whether the ALJ considered and applied the dictates of section 404.1527(c) in determining the ultimate weight to assign Dr. Montero-Pearson's opinion. This is an error. Application of section 404.1527(c) is especially critical since there is no evidence establishing that Drs. Sheck's and Montero-Pearson's opinions regarding Plaintiff's ability to lift are inconsistent, and the ALJ relied on speculative inferences based on her review of Dr. Wilchfort's opinion.[5] Accordingly, remand is appropriate to allow the ALJ to adequately explain

---

[4] The Court's analysis is the same as it relates to Dr. Blair's opinion, which the ALJ assigned little weight, limiting Plaintiff's lifting to less than five pounds until her visit with Dr. Montero-Pearson. Dr. Blair rendered this opinion in July 2014 before the third surgery. A.R. 25.

[5] These errors are not harmless because if Dr. Montero-Pearson's opinion was assigned controlling or great weight, Plaintiff would not have the RFC to perform sedentary work. 20 C.F.R. § 404.1567(a)(sedentary involves the ability,

the weight to be assigned to Dr. Montero-Pearson's opinion in accordance with the relevant

regulations and also to ensure that any RFC determination is not based on speculative inferences.

**B. Error Regarding Past Relevant Work and Transferability of Skills**

Based on the findings above, the Court will not delve deeply into the arguments concerning

past relevant work, transferability of skills, and the application of the medical vocational

guidelines because different RFC findings on remand may impact the determination on these

issues. However, the Court is compelled to briefly address an additional matter that should be

considered on remand: the identification of Plaintiff's past relevant work as an "order clerk."

Plaintiff was a principal clerk typist employed by a government institutional setting for the

developmentally disabled through her retirement. A.R. 44; 204-205. In the Work History Report,

Plaintiff described this job as comprising the following duties: ordering medical supplies and

nutritional supplements and delivering them, computer work, and completing reports. A.R. 204-

205. After soliciting additional information from Plaintiff about her duties during the hearing, the

vocational expert identified Plaintiff's work as an "order clerk" since her job included the actual

ordering of items. A.R. 54.

Plaintiff argues that the ALJ erred in identifying Plaintiff's past relevant work as an order

clerk (DOT Code 249.362-026)[6] – which is a light, semi-skilled job – after she specifically

---

amongst other things, to lift no more than 10 pounds at a time and occasionally lift and carry articles).

[6] The DOT description for order clerk follows:

> Processes orders for material or merchandise received by mail, telephone, or personally from customer or company employee, manually or using computer or calculating machine: Edits orders received for price and nomenclature. Informs customer of unit prices, shipping date, anticipated delays, and any additional information needed by customer, using mail or telephone. Writes or types order form, or

testified that her work included ordering medical supplies and nutritional supplements through vendors, completing reports, computer work, counting products, and data entry work. Pl.'s Br. 16. Plaintiff argues that the description of the order clerk job title involves taking orders from customers and assisting in fulfillment, but these duties were not within the scope of her responsibilities, and she never worked in customer service. Pl.'s Br. 16. While noting that her past work likely constituted a composite job, Plaintiff argues that the ALJ should have found that her job duties were similar to that of an officer helper (DOT Code 239.567-010)[7] – a light, unskilled job – which involved furnishing workers with supplies, distributing paperwork, and marking and filing records. Pl.'s Br. 16. In response, the Commissioner argues that the VE's classification of Plaintiff's work as an order clerk as opposed to similar clerk titles is supported by Plaintiff's testimony. Def.'s Br. 12. The Commissioner argues that Plaintiff does not mention that the description of order clerk is not limited to customer service, but also anticipates the processing of "order[s] for material or merchandise received by mail, telephone, or personally from customer *or company employee*, manually or using computers." Def.'s Br. 14.

At step four, the ALJ must consider whether the claimant retains the RFC to perform her past relevant work, *see* 20 C.F.R. § 404.1520(a)(4)(iv), and does so by considering three substeps:

---

enters data into computer, to determine total cost for customer. Records or files copy of orders received according to expected delivery date. May ascertain credit rating of customer

[7] The DOT description follows:

Performs any combination of following duties in business office of commercial or industrial establishment: Furnishes workers with clerical supplies. Opens, sorts, and distributes incoming mail, and collects, seals, and stamps outgoing mail. Delivers oral or written messages. Collects and distributes paperwork, such as records or timecards, from one department to another. Marks, tabulates, and files articles and records. May use office equipment, such as envelope-sealing machine, letter opener, record shaver, stamping machine, and transcribing machine.

(1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity;

(2) the ALJ must make findings of the physical and mental demands of the claimant's past work;

and (3) the ALJ must compare the residual functional capacity to the past relevant work to

determine whether claimant has the level of capability needed to perform the past relevant work.

*See Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009)(citing *Burnett v.*

*Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir.2000)).

At issue here are findings relating to substep two evaluating Plaintiff's past relevant work

and the duties of the same. Here, there is no record evidence supporting the ALJ's classification of

Plaintiff's past relevant work as an order clerk, thus, it was an error to identify her past work as

such. Despite the Commissioner's argument, the Court could not locate any record evidence

reflecting that Plaintiff processes orders received from customers or company employees. To the

contrary, Plaintiff testified that she was responsible for ordering medical and nutritional supplies

from vendors. Moreover, the balance of the order clerk title description is wholly distinct from the

description Plaintiff provided about her past work – it largely references customer-facing tasks

such as informing customers about prices, shipping dates, delays, and gathering additional

information from customers. Because there is no record evidence reflecting any of these duties, it

was an error to make determinations contrary to the uncontroverted evidence presented by Plaintiff

about her past work. *See Miranda v. Barnhart*, 2005 WL 705343, at *7 (D. Del. Mar. 28,

2005)(citing *Burnett*, 220 F.3d at 123).

Indeed, record evidence shows that the office helper job title identified by Plaintiff aligns

somewhat more closely with Plaintiff's description of her past work. Specifically, it aligns more

with the clerical aspects of her past work like opening mail, handling records and timecards, and

filing documents, however, the Court notes that the office helper title does not include the critical part of the duties described by Plaintiff – ordering, tracking, reconciling, and recording medical supplies, and preparing reports relating to the same.[8] Thus, the issue of Plaintiff's past work should be reconsidered on remand as well. The ALJ shall determine which DOT code most accurately describes Plaintiff's past relevant work to determine, given her RFC, whether she can perform such relevant past work.[9]

### V. CONCLUSION

For the reasons set forth above, the ALJ's decision will be vacated and remanded. On remand, the ALJ shall consider the weight to be assigned to Dr. Montero-Pearson's opinion in accordance with the relevant regulations and ensure that any RFC determination is not based on speculative inferences. The ALJ shall also determine which DOT occupational code most accurately describes Plaintiff's past relevant work to determine, given her RFC, whether she can perform such relevant past work. An accompanying Order will be entered.

Dated: May 2, 2022                          s/ Karen M. Williams
                                            KAREN M. WILLIAMS
                                            United States District Judge

---

[8]  As the Court is not the factfinder, the Court's role is only to determine whether the finding regarding past relevant work is supported by substantial evidence, not to make determinations about what Plaintiff's past relevant work should be classified as. Indeed, if it is the case that Plaintiff's past relevant work is more appropriately classified as an office helper, the error would not be harmless because an individual cannot acquire transferable skills from unskilled work. Here, the ALJ's decision determined that Plaintiff had transferable skills from her "semi-skilled" past relevant work as an order clerk.

[9]  Given the Court's findings regarding the RFC and past relevant work and how reconsideration of the same could drastically alter the ALJ's determinations, the Court will not address the issue relating to transferable skills and application of the medical vocational grids.